UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICIA C.,

            Plaintiff,

         v.                                      **DECISION AND ORDER**

                                                          22-CV-950S

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

        1.        Plaintiff Patricia C.[1] brings this action, pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed her application with the Social Security Administration on March 6, 2020.  Plaintiff alleged disability beginning July 1, 2019, due to obesity, diverticulitis, gastroesophageal reflux disease ("GERD"), arthritis, Meniere's disease with dizziness, hearing loss, asthma, endometrial polyps, hypertension, thyroid impairment, benign neoplasm of the pineal gland, status post-right small finger release surgery, left index finger trigger finger and degenerative changes of the second metacarpophalangeal joint, right elbow epicondylitis and osteoarthritis, and seizure disorder.  Plaintiff's application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3. On September 17 and 22, 2021, ALJ Lori Romeo held video hearings (due to the COVID-19 pandemic) at which Plaintiff—represented by counsel—and Vocational Expert Elaine Cogliano appeared and testified. (R.[2] at 20, 54-83, 84-118.) At the time of the hearing, Plaintiff was a 54-year-old woman with a master's degree and attending school pursuing a degree in Information Technology. She had past relevant work as a user support analyst, microcomputer support specialist, and eligibility worker. (R. at 20, 93, 94, 120, 325, 1520.)

4. The ALJ considered the case *de novo* and, on November 22, 2021, issued a written decision denying Plaintiff's application for benefits. After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3] (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10, 14.) Plaintiff filed a response on June 6, 2023 (Docket No. 15), at which time this Court took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion will be granted, and Defendant's Motion will be denied.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's November 22, 2021, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

2

Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.  The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

3

whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof at the fifth and final step.  See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C.

4

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 1, 2019.  (R. at 23.)

12. At Step Two, the ALJ found that Plaintiff has the following severe impairments:  obesity; diverticulitis; GERD; and arthritis in the hips, knees, back, neck, and shoulders.  (R. at 23.)

13. Pertinent to this case, Plaintiff also claimed as severe impairments suffering from Meniere's disease with dizziness, vertigo, peripheral vestibulopathy, and hearing loss.  The ALJ, however, concluded that the evidence did not show that Meniere's disease, vertigo, and peripheral vestibulopathy have "more than a minimal impact on the claimant's ability to perform basic work activities," that they were controlled through conservative treatment and medication with no evidence of "any significant or ongoing functional limitations" on Plaintiff.  (R. at 23, 24.)  The ALJ found that hearing loss was not severe because it was corrected with hearing aids (R. at 23-24).  The ALJ then found that Plaintiff remained stable regarding her vertigo, peripheral vestibulopathy of her left ear and low frequency hearing loss in that ear (R. at 24).

14. Plaintiff also claimed as severe impairments asthma, endometrial polyps, hypertension, thyroid impairment, benign neoplasm of the pineal gland, status post-right small finger release surgery, left index finger trigger finger and degenerative changes of the second metacarpophalangeal joint, right elbow epicondylitis and osteoarthritis, and

seizure disorder.  The ALJ concluded that each of these ailments was not severe.  (R. at 23, 24-25.)

15.At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 23.)

16.Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work and that she should not engage in any overhead lifting but can reach in all other directions and use her hands without limitations.  Further, the ALJ found that Plaintiff should work indoors and can be exposed to normal indoor air temperatures and air quality but should not be exposed to any concentrated levels of cold, heat, dust, fumes, and respiratory irritants.  The ALJ determined that Plaintiff can work in areas that range from quiet through moderate noise levels; occasionally climb stairs; and perform work at the specific vocational preparation index one through nine levels.  The ALJ also found that Plaintiff cannot work near any dangerous machinery or near bodies of water.  (R. at 29.)

17.At Step Four, the ALJ found Plaintiff could perform her past relevant work as a user support analyst, microcomputer support specialist, or eligibility worker, concluding that Plaintiff was not disabled.  (R. at 44-46.)

18.Plaintiff raises three arguments asserting that the RFC is not supported by substantial evidence.  First, Plaintiff argues that the ALJ erroneously found that Plaintiff's Meniere's disease, dizziness, vertigo, and peripheral vestibulopathy were not severe impairments.  Alternatively, Plaintiff argues that even if the ALJ properly found these conditions non-severe, the ALJ further erred in not considering these ailments in the RFC

6

analysis.  (Docket No. 10, Pl. Memo. at 19-22, 22-23.)  Second, Plaintiff argues that the finding that she can work in a moderate noise environment was unsupported by substantial evidence (id. at 23-26).  Third, Plaintiff faults the ALJ for not properly assessing her ability to handle stress in the workplace (id. at 26-29).  For the reasons that follow, this Court accepts Plaintiff's arguments and finds that the ALJ failed to consider the severity of Plaintiff's Meniere's disease and related ailments, lacked substantial evidence for the noise environment finding, and did not appropriately address her ability to deal with stress, all warranting remand.

19. First, Meniere's disease is a disorder of the membranous labyrinth of the inner ear that is marked by recurrent attacks of dizziness, tinnitus, and deafness[4].

20. At Step Two, an impairment is "severe" if it significantly limits an individual's ability to perform basic work activities, 20 C.F.R. § 404.1520(c).  An impairment is deemed "not severe," however, when medical or other evidence establish only slight abnormality that would have no more than a minimal effect on an individual's ability to work.  See SSR 85-28, 1985 WL 56856, at *3 (1985); Donahue v. Colvin, No. 6:17-CV-06838 (MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018).

21. At this Step, Plaintiff bears the burden of establishing the severity of her impairment.  This severity requirement, however, is de minimis "and is meant only to screen out the weakest of claims."  Herman S. v. Comm'r, 577 F. Supp. 3d 190, 195 (W.D.N.Y. 2022); see also  Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).

22. This Court finds that Plaintiff here has made a de minimis showing of the severity of her Meniere's disease, dizziness, vertigo, and peripheral vestibulopathy and

---

[4]Merriam-Webster's Medical Desk Dictionary 422 (1993).

the ALJ erred in not finding these ailments were severe impairments. Alternatively, even if Plaintiff's conditions were not severe, the ALJ erred in failing to consider them in the remaining steps of the ALJ's analysis.

23. Plaintiff's medical record notes her left ear hearing loss and deafness, dizziness, episodes of vertigo, and light headedness (R. at 1328-29, 1082-85, 926, 934-35, 1153-54, 899, 573, 2003-04), all symptoms of Meniere's disease. Her medical record showed that Plaintiff sustained falls and stumbled due to vertigo and dizziness (R. at 888, 894, 907, 911, 1562, 1691). Plaintiff attended physical therapy 21 times from August 2019 through March 2020 for these symptoms and began vestibular therapy in November 2020, but discontinued it due to lack of health insurance coverage (R. at 100, 2003). She testified that her vertigo and dizziness affected her for 6-8 days a month, which precluded her from driving and caused her to fall (R. at 97, 106-07, 888, 894, 907, 911). This Court finds from this medical evidence that Plaintiff thus minimally established significant limitations to performing work from her Meniere's disease.

24. Alternatively, even if one accepts the ALJ's finding that Plaintiff's conservative treatment for Meniere's disease, dizziness, vertigo, and peripheral vestibulopathy rendered those ailments to be nonsevere or not meet a <u>de minimis</u> Step Two showing of severity (R. at 23), the ALJ nevertheless erred in not incorporating Plaintiff's Meniere's disease, dizziness, vertigo, and peripheral vestibulopathy as non-severe impairments in subsequent Steps of her analysis.

25. Even if the ALJ finds certain claimed ailments were non-severe, after Step Two the ALJ must consider and discuss ailments deemed not to be severe as part

of the Step Four analysis.  Collins v. Comm'r, No. 19-CV-1350-LJV, 2020 WL 6488744, at *5 (W.D.N.Y. Nov. 4, 2020) (internal citation and quotation omitted).

26. The ALJ merely found that that Plaintiff's statements of the intensity, persistence, and limiting effects of these aliments were not consistent with the medical evidence.  (R. at 30.)  The ALJ did not discuss this evidence or its internal consistency to support disregarding the Meniere's disease, dizziness, vertigo, and peripheral vestibulopathy.  See Collins, supra, 2020 WL 6488744, at *5).  Furthermore, the ALJ has not considered these symptoms with her other impairments.  The ALJ has not cited examples of any purported inconsistency in the medical record.

27. Plaintiff's Motion for Judgment on the Pleadings regarding the consideration of her Meniere's disease, dizziness, vertigo, and peripheral vestibulopathy is granted and Defendant's motion for opposing relief is denied.  On remand, the ALJ shall consider whether Plaintiff's Meniere's disease, vertigo, peripheral vestibulopathy, or dizziness are severe impairments and, if deemed to be non-severe, consider the combined effects of their symptoms in the subsequent steps in the analysis.

28. As for her second argument, Plaintiff contends that the ALJ's finding that she could work in a moderate noise environment (cf. R. at 29) was unsupported by substantial evidence.  She contends that there was no substantial evidence for ALJ's Step Two finding that her hearing loss was not severe (R. at 29).  Plaintiff further argues that there was no evidence of any improvement or correction of her hearing with hearing aids to dictate the noise level she could endure.  Rather, Plaintiff testified that her tinnitus was loud and distracting (R. at 106-08), contrary to the ALJ's findings regarding use of a hearing aid.

9

29. This Court agrees; the ALJ lacked substantial evidence to support finding that Plaintiff could work in a quiet to moderate noise level environment distinct from merely avoiding loud environments. This record does not contain evidence either on her ability to hear or the level of noise she can endure.

30. Social Security regulations require evaluation of the ability to work in a noisy workplace "on an individual basis." SSR 96-9p, 1996 WL 374185, at *9 (1996). Under the agency's Program Operations Manual System ("POMS"), noise level is rated on five-level coding system based upon the volume of the ambient noise. Social Security Admin., POMS, DI § 25001.001, Medical and Vocational Quick Reference Guide, A. 49., Noise level (2023). The agency's Selected Characteristics of Occupations rate noise levels as quiet (or like the sound in a library) to moderate (the sound in a department store) that is different from a loud environment (or the sound of large earth movers or heavy traffic). Id.

31. Here, the ALJ has not set forth evidence supporting the noise level assigned to Plaintiff. At Step Two, the ALJ found that Plaintiff's hearing loss was corrected by hearing aids (R. at 23, 1547-59). The ALJ did not discuss Plaintiff's hearing loss or the appropriate noise level for Plaintiff to work in the subsequent Steps. The ALJ instead selected a noise level Plaintiff could endure without stating a rationale or evidence for this conclusion. This failure to consider evidence for the noise level that Plaintiff can tolerate in the RFC analysis precludes meaningful judicial review of the ALJ's decision.

32. The record contains the state agency evaluation of consultant Dr. H. Miller which noted the correction of Plaintiff's hearing in her left ear but advised that she should avoid loud environments (R. at 43, 159, 162).

33.     The ALJ, however, did not find this assessment persuasive, concluding that it was "inconsistent with, and unsupported by, the clinical and longitudinal evidence received at the Hearing level, which showed that the claimant was more limited than opined" (R. at 43).  Instead, the ALJ found Plaintiff could work in a quiet through moderate noise level (R. at 29).

34.     The ALJ's conclusion that Plaintiff could work in a quiet to moderate noise environment is distinct from Dr. Miller's opinion that Plaintiff should avoid loud environments.  Avoidance of a loud environment does not automatically require assignment to a quiet to moderate noise environment.

35.     The evidentiary record and the ALJ's decision have not supplied a rationale for the ALJ's workplace noise finding.  This Court need not glean this record to find support for the ALJ's decision.  Cf. Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982) (per curiam).  This Court is "unable to fathom the ALJ's rationale in relation to evidence in the record," id. at 469; see Norman v. Astrue, 912 F. Supp. 2d 33, 41 (S.D.N.Y. 2012), to support the ALJ's noise finding.

36.     Thus, this Court finds the ALJ failed to provide an individual evaluation of Plaintiff's ability to work in a noisy environment or support the ALJ's conclusion that Plaintiff could work in quiet to moderate noise environment.  Accordingly, the ALJ lacked substantial evidence for the noise level finding.  This absence of substantial evidence supporting this ALJ's hearing impairment finding warrants remand.  Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's motion is denied.

37. Finally, Plaintiff argues that the ALJ failed to consider her ability to handle work-related stress and did not properly evaluate her mental impairments at Step Two of the analysis.

38. Plaintiff argued that she suffered from major depressive disorder and generalized anxiety disorder. At Step Two, the ALJ, relying on Plaintiff's conservative treatment and medication, found that that these were non-severe impairments. (R. at 25-27.) Further, the ALJ found the evidence did not show her conditions had more than a minimal impact on her ability to perform basic work activities (R. at 25). As a result, the ALJ found that the evidence did not support the conclusion that Plaintiff's major depressive disorder and generalized anxiety disorder had more than a minimal impact on her ability to perform basic work activities (R. at 25). Although the ALJ acknowledged Plaintiff's complaints of her handling stress, the ALJ found that Plaintiff could work despite that alleged stress because she was able to care for her personal needs, provide care for her granddaughter, and perform household chores (R. at 27).

39. Given the ALJ finding at Step Two the ALJ did not include any mental limitations in the RFC (R. at 25-27, 29).

40. Given the highly individualized nature of stress even to perform low-stress jobs, the ALJ needed to make specific findings about the nature of Plaintiff's stress, the circumstances that triggered it, and how those factors affected her ability to work, Stadler v. Barnhart, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. 2006); SSR 85-15, 1985 WL 56857, at *6 (1985).

41. This Court concludes that the ALJ has not made such specific findings about the nature of Plaintiff's stress, what triggers it, and how those factors affected her

ability to work.  Stadler, supra, 464 F. Supp. 2d at 188-89.  This Court cannot judicially weigh evidence that should have been found by the ALJ.

42. The fact that Plaintiff could perform household chores and care for others does not address what triggered her stress or how she dealt with workplace stress.  The ALJ merely uses this performance of aspects of her daily life to marginalize her ability to deal with stress without extrapolating how she would perform in the workplace with her stress.

43. The case also is remanded for findings on the nature of her stress, its triggers, and how it affects her ability to work to identify the appropriate stress level.  See id. at 189.  Thus, Plaintiff's Motion for Judgment on the Pleadings on this ground is granted while Defendant's motion is denied.

44. In sum, Plaintiff's Motion for Judgment on the Pleadings is granted, Defendant's motion is denied, and this case is remanded for further proceedings.  On remand, the ALJ shall consider Plaintiff's non-severe impairments, such as her mental limitations as well as Meniere's disease, dizziness, vertigo, and peripheral vestibulopathy, in assessing her RFC and ultimately her ability to perform work.  Furthermore, the ALJ shall reconsider the evidence in this record on the appropriate sound level in Plaintiff's work environment.  Finally, the ALJ shall consider Plaintiff's stress in the RFC analysis.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:   February 23, 2024
         Buffalo, New York

                                        <u>s/William M. Skretny</u>
                                        WILLIAM M. SKRETNY
                                        United States District Judge